2:21-cv-00452

State
vs
Miller

No. 09-F-233

FILED
AUG 5 2021
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

Mandamus

Only issue with this Revokation is that this Criminal Charge for Prohibite Person in Possession of a firearm is the same Criminal Charge this board used to Revoke my parole in 2019 Rule "E" for manifest behavior. Allow me to Explaine with proof by presenting this documentation.

[signature] #233

On 8.15.19 I was charged with prohibited person in possession of a firearm. (1# Ex)

On 10.21.19 the board charged me with violating Rule "F" & Rule "E" while on parole. for this criminal charge. (2# )

On 11.4.19 Revokation date this board Revoked my parole. (Ex. 3#)

On or about 2.24.20 I was Released on parole. (ex. 4-

On 7.10.20 Plea date the Court accepted my plea for #3 yrs Home Confinement for this Prohibited Person in Possession of a Firearm. (Ex. 5#)

On 9.11.20 Sentence date the Court sentence me to #3 yrs in prison for Prohibited person in possession of a Firearm. (Ex. 6#)

On 9.23.20 the board Charge me with violating Rule "K" for being "Convicted" of Prohibited Person in Possession of a Firearm (Ex. 7#)

On 11-4-20 this board Revoked my parole for being a felon in possession of a firearm. Note: I'm sending this board a copy of State v Sears to prove this revokation is illegal. (Ex. 8th)

Note: I committed no new violation while on this 4-24-20 parole.

I declare under penalty of perjury

Andrew Miller #3523766
1001 Center Way
Chas, WVa 25301





CITY OF
CHARLESTON, WEST VIRGINIA
POLICE DEPARTMENT
P.O. BOX 2749
CHARLESTON, WEST VIRGINIA 25330

Narrative - Nigel Waller 08/15/19 07:19 Printed on September 5, 2019

# Supplemental Report By Nigel Waller, 08/15/19 07:19

**Case #I19081504**
**Typed By Nigel Waller**

On the 15th day of August 2019 at approximately 0344 hrs I was contacted by Metro Communication in reference to Dunbar PD and South Charleston PD units out on a traffic stop at the intersection of Fairlawn Avenue and King Street with a vehicle matching the description from the Wanton Endanger call from the 800 block of Kanawha Blvd East. Ptlm. Waggy and myself responded to the scene where South Charleston PD had the three vehicle occupants detained and we were advised by the units on scene a firearm was observed in view of the center console of the vehicle. The units on scene advised they had gotten into a short pursuit with the vehicle before the vehicle came to a stop at the above stop location. Upon search of the vehicle a Ruger .380 caliber firearm (378-73329) was located in view of the center console of the suspect vehicle which was the caliber of the spent shell casings located at the scene. A second Ruger 9mm firearm (302-99318) was located concealed in the glove box of the vehicle. While on scene we were also advised by the units on the traffic stop that there appeared to be a bullet hole in the rear driver side tail light. I contacted car 16 Driven by Sgt. K. Oldham and provided him with the information obtained on scene and he made contact with Det. M. Kinder. Det. Kinder advised he would send two units to respond to the scene. Det. J. Hill and Det. Lovern responded to the scene.

The passengers of the vehicle were identified as Andrew Wayne Miller, Fontaine Akeem Nelson and the driver of the vehicle was identified as Latasha Carr. Latasha Carr was taken into custody by South Charleston PD for the pursuit. Miller and Nelson were taken into custody by CPD (Ptlm. Waggy) for prohibited person in possession of firearm/prohibited person carrying concealed. Miller and Nelson were transported to the station for processing. The suspect vehicle was towed from the scene by Mt. Auto to Charleston Auto.

Cpl. N. Waller
PR # 4731
Unit 82

Signed ______________________________ Date ________________
Nigel Waller, Officer



Miller Exhibit #1

JEFF S. SANDY, CFE, CAMS
CABINET SECRETARY

WEST VIRGINIA STATE PAROLE BOARD
1356 HANSFORD STREET, SUITE B
CHARLESTON, WEST VIRGINIA 25301-0700
TELEPHONE (304) 558-6366
FAX NUMBER (304) 558-5678

BOARD MEMBERS
BENITA F. MURPHY
EDWARD E. WOOTON
*RALPH D. MILLER
*TED A. WHITE
CEDRIC R. ROBERTSON
KIM M. BLAIR
JOHN H. SINES
BRIAN K. REED

October 21, 2019

Andrew Wayne Miller
3452376
South Central Regional Jail
1001 Centre Way
Charleston, WV 25309

Dear Mr. Miller:

The Division of Corrections has placed the following charges of parole violation against you:

> Charge 1. You did violate Rule f of the Rules and Regulations governing your release on parole in that on or about August 15, 2019, you did have a firearm in your possession.
>
> Charge 2. You did violate rule e of the rules and regulations governing your release on parole in that on or about August 15, 2019, you did manifest behavior that threatened the safety of yourself or others, or that could result in your imprisonment; which caused you to be charged with "Persons Prohibited from Possession a Concealed Firearm, and Persons Prohibited from Possessing Firearms".

Please take notice that a final parole violation hearing will be held for you at the **South Central Regional Jail,** by video from West Virginia Parole Board Office, **on November 4, 2019, at 1:30 p.m.** The purpose of this hearing is to determine whether the Order of Release on Parole Granted you on July 2, 2018, releasing you from confinement in the West Virginia McDowell County Correctional Center, Welch, WV shall be revoked.

Please be advised that you have certain rights before and during the hearing. They are:

1. You have the right to representation by an attorney. If you cannot afford an attorney, contact your parole officer who will ask the circuit court to appoint one at no cost to you.

2.     You have the right to remain silent.  If you give up your right to remain silent, anything you say may be used against you.  A guilty plea to any of the above listed charges can result in your return to a penal institution.

3.     You have the right to be heard in person and to present witnesses and documentary evidence.

4.     You have the right to offer reasons why your parole should not be revoked.

5.     You have a right to the disclosure of the evidence used against you at the hearing.

6.     You have a right to confront and cross-examine adverse witnesses, unless the Hearing Officer specifically finds good cause for not allowing confrontation.

Please note, due to security issues at the Regional Jails, only law enforcement officers, parole officers and attorneys will be permitted in the video tele-conferencing room. Therefore, if you have witnesses who need to be present, please contact our office at 558-6366 to make arrangements.

:dmc
cc:  Parole Officer – .Jordan McKinley
     Regional Director  - Mike Brown
     Attorney:- .Brian Blickenstaff, Esq.
     Parole Board
     Video Officer – SCRJ
     DOC file



**STATE OF WEST VIRGINIA**

**PAROLE BOARD**

**CHARLESTON**

**ORDER**

**OF**

**REVOCATION OF PAROLE**

**WHEREAS**, Andrew Wayne Miller, 3452376-04, was convicted of felony crimes as follows:

EFFECTIVE SENTENCE DATE: May 8, 2009 JC

CRIME: A] Burglary; B] Wanton Endangerment with Firearm; C] Kidnapping; D] Conspiracy to Commit 1st Degree Murder; E] Attempted 1st Degree Murder with Firearm

CIRCUIT COURT: A-D] Raleigh; E] Kanawha

SENTENCE: A] 1-15 yrs.; B] 5 yrs. CS; C] 10 yrs. CS; D] 1-5 yrs CS; E] 3-15 yrs. CC

**WHEREAS**, Andrew Wayne Miller, was granted a release on parole from the West Virginia McDowell County Correctional Center on April 17, 2019, and

**WHEREAS**, Andrew Wayne Miller, has been found guilty of violating the conditions of his release on parole and the Rules and Regulations made for his supervision in the following ways:

Charge 1. You did violate Rule f of the Rules and Regulations governing your release on parole in that on or about August 15, 2019, you did have a firearm in your possession.
☒ Not Guilty
☐ Dismissed by: ☐ Parole Officer ☐ Parole Board
☐ Guilty by:____________________________

Charge 2. You did violate rule e of the rules and regulations governing your release on parole in that on or about August 15, 2019, you did manifest behavior that threatened the safety of yourself or others, or that could result in your imprisonment; which caused you to be charged with "Persons Prohibited from Possession a Concealed Firearm, and Persons Prohibited from Possessing Firearms".
☐ Not Guilty
☐ Dismissed by: ☐ Parole Officer ☐ Parole Board
☒ Guilty by: Testimony and evidence.

**THEREFORE**, the West Virginia Parole Board pursuant to the provisions of Chapter 62, Article 12, Section 19, Code of West Virginia 1931, as amended, does hereby revoke the parole on which the said, Andrew Wayne Miller, was heretofore granted release from his confinement and order that the warden do forthwith return the said, Andrew Wayne Miller, to be therein re-confined until he is otherwise released according to law.

He will again be eligible for parole in 2-2020

WEST VIRGINIA PAROLE BOARD

Member

Member

Member

Done this 4 day of November 2019.

original: Record Clerk- MCDOW
IPO- MCDOW
Warden- MCDOW
Robert Arnold
DOC file

Parole Officer- Roshana Gray
Regional Director- Mike Brown
Parolee
Administrator/Sheriff- SCRJ
Attorney- .

20'

Parole

**STATE OF WEST VIRGINIA**
**DIVISION OF CORRECTIONS**

**PAROLE REPORTING INSTRUCTIONS**

NAME: Andrew Miller OID NO. **3452376**

HOME: South Central Regional Jail

EMPLOYMENT: TO BE ARRANGED

YOU ARE INSTRUCTED TO REPORT YOUR ARRIVAL IMMEDIATELY TO:

You are being paroled into the custody of the SCRJ authorities to answer a Detainer.

Should you be released, either on bond, parole, probation, or otherwise, by such authority, or from any confinement which may be imposed by them, you will immediately notify the supervisor of Records for the Division of Corrections, 1409 Greenbrier Street, Charleston, West Virginia, 25311. The telephone number is (304) 558-2036.

While you are undergoing confinement, imposed by the above-named authorities, you will continue on parole status from West Virginia but will not be required to submit monthly parole reports.

Upon release form such confinement, you will be required to satisfactorily complete your parole period under the supervision of a Parole Officer.

DATE OF RELEASE: 04 /27 /2020

TRANSPORTATION: MCDO

cc: Institutional Record Clerk:
File/Central Office
DISTRICT:

I UNDERSTAND THE REPORTING INSTRUCTIONS OUTLINED ABOVE.

Parole Officer Parolee

WVA-8, REV 6/1/96

WVA-11, REV 5/1/01

(7-1-18)

WV DEPARTMENT OF PUBLIC SAFETY
DIVISION OF CORRECTIONS & REHABILITATION
PAROLE SERVICES

**Name:** MILLER, Andrew Wayne
**No.:** 3452376

☒ Parole
☐ Probation
☐ Misdemeanant

I. **RULES AND REGULATIONS GOVERNING PAROLE SUPERVISION**

Inmates released on parole are required to abide by the laws governing parole and by rules and regulations, as provided by the Commissioner, Division of Corrections & Rehabilitation, for their supervision. It is the duty of a field officer to require a parolee to abide by the terms and conditions of parole and the rules and regulations made for his or her supervision. The field officer may arrest the parolee with or without a warrant or can cause his or her arrest by any law enforcement officer.

Initial

**RULES AND REGULATIONS**

All parolees supervised by the parole authorities of the West Virginia Division of Corrections & Rehabilitation shall be required to execute a statement that he or she understands the following conditions and agrees to abide by them.

a. When released, a parolee or probationer must proceed directly to the place to which he or she has been paroled (or otherwise required to reside) and report to his or her parole officer within twenty-four (24) hours unless otherwise instructed.

b. A parolee or probationer must obtain written permission from his or her parole officer before he or she leaves the prescribed area of supervision to which he or she is paroled. Your prescribed area is Kanawha County

c. A parolee or probationer must notify his or her parole officer of any changes of residence or employment prior to those changes taking place so that any changes may be reviewed for supervision suitability.

d. A parolee or probationer must have suitable employment, remain gainfully employed and support any dependents to the best of his or her ability.

e. A parolee or probationer must maintain behavior that does not threaten the safety of himself or herself or others or that could result in imprisonment.

f. A parolee or probationer must not own, carry or possess firearms or unlawful weapons of any kind.

g. A parolee or probationer must report within twenty-four (24) hours to his or her parole officer each time he or she is arrested or questioned by officers of any law enforcement agency.

h. Between the first and tenth of each month a parolee or probationer must make a complete and truthful written report to his or her parole officer of his or her previous month's activities on forms provided by his or her parole officer.

i. The parolee or probationer must report in person as directed by the parole officer.

j. A parolee or probationer must not possess, use or have in his or her possession any illegal drugs, paraphernalia or alcohol for consumption.

k. A parolee or probationer must not violate any municipal ordinances or the laws of this state, any other state, or the United States.

l. A parolee or probationer must abide by any special written requirements imposed by his or her parole officer.

m. A parolee or probationer must pay a monthly supervision fee not to exceed forty dollars ($40.00) per month by certified check or money order no later than the 5th of each month to the Division of Corrections Supervision Fund, 1409 Greenbrier Street, Charleston, WV 25311, unless he or she has been approved for an exemption or reduction.

n. A parolee or probationer on parole from an offense against a child as defined in WV Code 61-8-12, 61-8B-1 et. seq. or 61-8D-1 et. seq. or similar convictions from other jurisdictions, must not live in the same residence as any minor child, visit with any minor child or have contact with the victim of the offense.

o. If being paroled from a sexual offense, a parolee or probationer must register with the WV State Police as a sex offender within three (3) days of release in accordance with the WV Code 15-12-2.

p. A parolee or probationer shall allow his or her parole officer to visit his or her place of residence or employment for supervision purposes without obstruction.

q. A parolee or probationer shall submit to a search without warrant of his or her person, place of residency or motor vehicle by his or her parole officer for supervision purposes at any time during the parole period.

r. If being paroled from a child abuse or child neglect offense as defined in WV Code 61-8D-2, 2a, 3,3a, 4 and 4a, or similar convictions from other jurisdictions, the parolee must register with the WV State Police within three (3) days of release in accordance with the WV Code 15-2C-2.

I have had the above rules and regulations read to and explained to me and ____ my WV Conditions of Parole ____ my sending state's rules and regulations. I have had the opportunity to ask questions about them and have received clarification to the same. I understand these requirements as they pertain to my supervision and agree to abide by them.

II. **SPECIAL CONDITIONS**

In compliance with Rule " I " of the rules and regulations of the Division of Corrections governing your release on probation/parole, I agree to abide by the following conditions:

☒ Not to enter any drinking establishment

☒ Curfew from 9:00 p.m. until 6:00 a.m. for 3 months not to interfere with employment or treatment

☒ Participate and complete an alcohol/substance abuse treatment program as approved by your supervising parole officer

☒ Pay all court costs and restitution within 12 months of release

☒ Not to own, carry, or possess any deadly weapons, nor any other object or instrument which can be readily adapted to inflict bodily harm or serious injury to include ammunition

☒ I will not deliberately make my whereabouts unknown to my supervising Parole Officer or fail to report to my supervising Parole Officer for the purpose to avoid supervision. If I deliberately make my whereabouts unknown to my supervising Parole Officer or fail to report to my supervising Parole Officer for the purpose to avoid supervision, I will be considered an absconder and a warrant will be issued for my arrest which will result in a referral for parole revocation.

☒ You will obtain permission from your supervising officer and warden/administrator before visiting a state correctional center, county detention facility or regional jail. In addition, you will not loiter around any state correctional center, county detention facility or regional jail while under supervision.

☒ 1. You shall not directly or indirectly with the victim(s), victim's family, or co-defendant/Victim: Jessica Mitchell, Jackie Miller, Tray Hall, Kevin Charlton

☒ 2. You shall not directly or indirectly with the Co-defendants: Kevin Jamal Cousins, Ryan Monroe.

☐ 3. ______

☐ 4. ______

**FINANCIAL OBLIGATIONS**

☐ I shall pay a supervision fee to the Division of Corrections & Rehabilitation at a rate of $40.00 per month.

☐ I shall make restitution to ______ at the rate of $ ______ per month for a total of $ ______

☐ I shall pay fines and court costs of $ ______ by ______

☐ I shall complete ______ hours of community service work.

______ Probationer/Parolee

7-13-20 Date

## III. NOTIFICATION OF FEDERAL FIREARMS DISABILITY

Title 18; Section 922 (g) of the United Stated Codes states that "It shall be unlawful for any person (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; (2) who is a fugitive from justice; (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances ACT (21 U.S.C. 802)); (4) who has been adjudicated as a mental defective or who has been committed to a mental institution; (5) who being an alien – (A) is illegally or unlawfully in the United States; or (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26))); (6) who has been discharged from the Armed Forces under dishonorable conditions; (7) who, having been a citizen of the United States, has renounced his citizenship; (8) who is subject to a court order that – (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

As a convicted felon, therefore, you do NOT have the privilege to hunt with a firearm and certainly do not have the privilege to purchase, possess, maintain, or have in your possession any firearm or ammunition or explosive devices.

To possess the above-mentioned items constitutes a violation of Federal Law and may be punishable according to current federal guidelines.

It is possible, in some instances, to gain relief from this law. Requests for relief should be directed to: Associate Director, Law Enforcement Bureau of Alcohol, Tobacco, and Firearms, 1200 Pennsylvania Avenue, Washington D.C., 20226. At this time BATF will only consider your request if the relief is necessary for your livelihood.

____________________ 7.15.00
Probationer/Parolee Date

IV.

## WEST VIRGINIA STATE CODE

### 61-7-7 Persons Prohibited From Possessing Firearms

A. Except as provided for in this section, no person shall possess a firearm as such is defined in section two of this article who: (1) has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; (2) is addicted to alcohol; (3) is an unlawful user or addicted to any controlled substance; (4) has been adjudicated as a mental defective or who has been involuntarily committed to a mental institution; (5) being an alien is illegally or unlawfully in the United States; (6) has been discharged from the armed forces under dishonorable conditions; (7) is subject to a domestic violence protective order that: a) was issued after a hearing of which such person received actual notice and at which such person had an opportunity to participate b) restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child and c) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child or (ii) by its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; (8) has been convicted in any court of a misdemeanor crime of domestic violence. Any person who violates the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars or confined in the county jail for not less than ninety days nor more than one year, or both.

B. Notwithstanding the provision of subsection (A) of this section, any person: (1) who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense or (2) who has been convicted in this state or any other jurisdiction of a felony controlled substance offense involving a Schedule I controlled substance other than marijuana, a Schedule II or a Schedule III controlled substance as such are defined in sections two hundred four, two hundred five and two hundred six, article two, chapter sixty-a of this code and who possesses a firearm as such is defined in section two of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correctional facility for not more than five years or fined not more than five thousand dollars, or both. The provisions of subsection (C) of this section shall not apply to persons convicted of offenses referred to in this subsection or to persons convicted of a violation of this subsection.

C. Any person prohibited from possessing a firearm by the provision of subsection (A) of this section may petition the circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law.

[signature] 7.15.10

Probationer/Parolee Date

V.

## DRUG TESTING NOTICE

## WEST VIRGINIA STATE CODE

60A-4-412 Defeating Drug and Alcohol Screening Test

(a) Any person who:

1. Knowingly sells, gives away, distributes or markets any substance or product in this state or transports such as substance or product into this state with the intent that the substance or product will be used to defeat a drug or alcohol screening test;
2. Attempts to defeat a drug or alcohol screening test by the substitution of a false sample;
3. Knowingly advertises for sale or distribution any substance or product the advertised purpose or which is to defeat a bodily fluid screening test for drugs or alcohol;
4. Adulterates a bodily fluid sample with the intent to defeat a drug or alcohol screening tests;
5. Knowingly possesses adulterants for the purpose of defeating a drug or alcohol screening test, or
6. Knowingly sells adulterants which are intended to be used to adulterate a urine or other bodily fluid sample for the purpose of defeating a drug or alcohol screening test.

(b) A person who violates a provision of subsection (a) of this section:

1. For a first offense is guilty of a misdemeanor and, upon conviction, shall be fined not more than one thousand dollars;
2. For a second offense is guilty of a misdemeanor and, upon conviction, be fined not more than five thousand dollars; and
3. For a third or subsequent offense is guilty of a misdemeanor and, upon conviction, be fined not more than ten thousand dollars or confined in the regional jail for not more than one year, or both.

(c) As used in this section, "adulterate" means a substance that is not expected to be in human fluids but that is a concentration so high that it is not consistent with human bodily fluids, including, but not limited to:

1. Bleach;
2. Chromium;
3. Creatinine;
4. Detergent
5. Glutaraldehyde
6. Glutaraldehyde/squalene;
7. Hydrochloric Acid;
8. Hydroiodic Acid;
9. Iodine;
10. Nitrite;
11. Peroxidase;
12. Potassium dichromate;
13. Potassium nitrate;
14. Pyridinium chlorochromate; and
15. Sodium nitrite.

In compliance with Rule "I" of the rules and regulations of the Division of Corrections & Rehabilitation governing your release on Probation/Parole, the following special condition is hereby imposed:

a. You will submit to alcohol and/or drug screening (urine samples and/or breath alcohol test, etc.) at the discretion of a Division of Corrections probation and parole officer.

b. Failure to submit to testing stated in (a) above will result in a probation and parole officer issuing a violation report against you.

c. Any attempt to alter or defeat the test is a violation of state law and you could face charges. At a minimum. a probation and parole officer will issue a violation report against you.

[signature] 7-15-20

Probationer/Parolee Date

VI. **SECURITY CLASSIFICATION SYSTEM**

a. ☒ Maximum (no less than 1 month) - Requires no less than 3 face to face contacts with your probation and parole officer

b. ☐ Medium (no less than 4 months) - Requires no less than 2 face to face contacts with your probation and parole officer

c. ☐ Minimum (no less than 6 months) - Requires no less than 1 face to face contact with your probation and parole officer.

Your level of supervision may be upgraded if necessary at any time. I understand that my probation and parole officer may visit my home and/or place of employment.

I have had this entire six (6) page document read and explained to me. I have had the opportunity to ask questions about each section and have received clarification to the same. I understand these requirements as they pertain to my supervision and agree to abide by them. I understand my initials or signature on sections I through VI indicate my understanding and acceptance of the rules and regulations contained in this document.

[signature] 7.13.20

Probationer/Parolee Date

[signature] 7-13-2020

Probation & Parole Officer Date

## STATE OF WEST VIRGINIA
## DIVISION OF CORRECTIONS

### RULES AND REGULATIONS GOVERNING PAROLE SUPERVISION

Inmates released on parole are required to abide by the laws governing parole and by rules and regulations, as provided by the Commissioner, Division of Corrections, for their supervision. It is the duty of a field officer to require a parolee to abide by the terms and conditions of parole and the rules and regulations made for his or her supervision. The field officer may arrest the parolee with or without a warrant, or can cause his or her arrest by any law enforcement officer.

90 CSR 2.2 **RULES AND REGULATIONS ARE AS FOLLOWS**

2.1 All parolees supervised by the parole authorities of the West Virginia Division of Corrections shall be required to execute a statement that he or she understands the following conditions and agrees to abide by them:

a. When released, you must proceed directly to the place to which you have been paroled and report to your parole officer within 24 hours unless otherwise instructed.

b. You are to have written permission of your parole officer before you leave the prescribed area of supervision to which you are paroled.

c. You are to notify your parole officer of any change of residence or employment prior to those changes taking place so that any changes may be reviewed for supervision suitability.

d. You are required to have suitable employment, remain gainfully employed, and support any dependents to the best of your ability.

e. You are required to maintain behavior that does not threaten the safety of yourself or others or that could result in imprisonment.

f. You must not own, carry or possess firearms or unlawful weapons of any kind.

g. You must report within 24 hours to your parole officer each time you are arrested or questioned by officers of any law enforcement agency.

h. Between the first and tenth of each month you must make a complete and truthful written report to your parole officer of your previous month's activities on forms provided by your parole officer.

i. You must report in person as directed by your parole officer.

j. You must not possess, use, or have in your possession any illegal drugs, paraphernalia, or alcohol for consumption.

k. You shall not violate any municipal ordinances or laws of this state, any other state, of the United States.

l. You will abide by any special written requirements imposed upon you by your parole officer.

m. You must pay a monthly (beginning the month after your release on parole) supervision fee of $40 per month by certified check or money order no later than the 5th of each month to the Division of Corrections Supervision Fund, 1409 Greenbrier Street, Charleston, WV 25311. If circumstances warrant, you may apply for an exemption from or reduction of the fee through your parole officer to the Director, Parole Services, Division of Corrections, 1409 Greenbrier Street, Charleston, WV 25311.

n. If being paroled from an offense against a child as defined in WV Code 61-8-12, 61-8B-1 (et seq.) or 61-8D-1 (et seq.), or similar convictions from other jurisdictions, you shall not live in the same residence as any minor child, visit with any minor child, or have contact with the victim of the offense.

o. If being paroled from a sexual offense, you must register with the Department of Public Safety as a sex offender within 3 days of release in accordance with WV Code 15-12.

p. You shall allow your parole officer to visit your place of residence or employment for supervision purposes without obstruction.

q. You shall submit to a search without warrant of your person, place of residency or motor vehicle by your parole officer for supervision purposes at any time during the parole period.

Parolee: ______________________ Date: 24 April 2020__

By: ______________________(Parole Officer)

WVA-11, REV 7/04

20'

FILED

2020 JUL 10 AM 9:45

KANAWHA COUNTY CIRCUIT COURT

Kanawha County
OFFICE OF THE PROSECUTING ATTORNEY
301 Virginia Street East
Charleston, WV 25301
(304) 357-0300
FAX (304) 357-0342

CHARLES T. MILLER
Prosecuting Attorney

May 29, 2020

Brian D. Yost
Attorney at Law
209 Washington Street, West, Suite 300
Charleston, WV 25302

Re: State of West Virginia v. Andrew Wayne Miller, also known as A-4
Case Numbers 19-F-608 and 19-M-168

Dear Mr. Yost:

After reviewing the file in this case, the State of West Virginia is prepared to make your client, Andrew Wayne Miller, also known as A-4, the following plea offer:

1. Andrew Wayne Miller, also known as A-4 may plead guilty, pursuant to Kennedy v. Frazier, to the felony offense of Persons Prohibited from Possessing a Firearm as contained in Count One of Felony Indictment Number 19-F-608. The maximum penalty which may be imposed by the Court is confinement in a state correctional facility for not more than five (5) years or fined not more than five thousand dollars ($5,000.00), or both confined and fined.

2. The Office of the Prosecuting Attorney will recommend a determinate term of three (3) years home confinement as to the appropriate disposition. However, the Office of the Prosecuting Attorney does reserve the right to cross-examine witnesses offered in mitigation of punishment and to correct any factual inaccuracies which come to the attention of the court or which are contained in the pre-sentence investigation report. The Office of the Prosecuting Attorney further recommends post conviction PR bond with home confinement and that defendant be permitted to self report to Home Confinement.

3. The State of West Virginia agrees not to seek to invoke the Recidivist Act as a result of the conviction. However, the State reserves the right to use this conviction as a basis for recidivist prosecution if the defendant is convicted of any subsequent felony (ies) in the future.

4. In exchange for this plea, the State of West Virginia will dismiss Count Two of Felony Indictment Number 19-F-608 and Count Four of Misdemeanor Indictment Number 19-M-168 at disposition.



5. It is further understood that should any party to this Agreement fail to meet the terms and conditions of this Agreement, then this Agreement should terminate as null and void.

6. It is further understood that should the defendant commit or be arrested for committing any felony or misdemeanor up to and including the date of disposition, then this Agreement may terminate as null and void at the discretion of the State of West Virginia.

7. It is expressly understood that should the within plea be vacated, set aside or overturned by any State or Federal Court, the parties will be returned to their original positions and the State of West Virginia will be free to proceed on the original charges. Further, that should either the State or the defendant violate or fail to fully comply with any provisions of this Agreement, the within plea, conviction and sentence shall be vacated and set aside by the Court upon the motion of the offended party, whether the State or the defendant, and the parties will be returned to their original positions before the entry of this plea, and any charges dismissed or reduced, as a result of this plea bargain will be reinstated.

The above seven (7) paragraphs constitute the entire Agreement between Andrew Wayne Miller, also known as A-4 and the State of West Virginia.

Very truly yours,

CHARLES T. MILLER
Prosecuting Attorney

By:

ADAM C. PETRY,
Assistant Prosecuting Attorney

ACP/jdc

Andrew Wayne Miller, also known as A-4 — 7/9/20 Date

Brian D. Yost, Counsel for Defendant — 7/9/20 Date



IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED
2020 SEP 11 PM 1:05
KANAWHA COUNTY CIRCUIT COURT

STATE OF WEST VIRGINIA

v. Case No. 19-F-608 (Judge Joanna I. Tabit) 19-M-168

ANDREW WAYNE MILLER, also known as A-4

**SENTENCING ORDER**

On the 9th day of September, 2020, came the defendant, **ANDREW WAYNE MILLER, also known as A-4**, and by his counsel, Brian D. Yost, and also came the State of West Virginia by Adam C. Petry, Assistant Prosecuting Attorney in and for Kanawha County, West Virginia, by video, for the purpose of a **FINAL HEARING FOR VIOLATION OF HOME CONFINEMENT**.

Thereupon, the Court proceeded to orally advise the defendant, **ANDREW WAYNE MILLER, also known as A-4**, of the violation of the terms and conditions of his home confinement as alleged in the written **NOTICE OF VIOLATION OF HOME CONFINEMENT** filed on the 2nd day of September, 2020, and duly served on the defendant, **ANDREW WAYNE MILLER, also known as A-4**; whereupon, the defendant did plead guilty and confess in open court to the allegations contained in paragraphs one and two as alleged in said written **NOTICE OF VIOLATION OF HOME CONFINEMENT**.

Upon defendant's oral pleas of guilty to paragraphs one and two of the **NOTICE OF VIOLATION OF HOME CONFINEMENT** entered in this Court on the 9th day of September, 2020, with his counsel then present, it is the judgment of this Court that the defendant, **ANDREW WAYNE MILLER, also known as A-4**, is guilty of violating the home confinement which was

67

imposed upon him on the 10th day of July, 2020 as a condition of bond and **ORDERS** the defendant's bond and home confinement be revoked.

Upon defendant's oral and written plea of guilty to the felony offense of Persons Prohibited from Possessing a Firearm, a provable offense as contained in Count One of Felony Indictment Number 19-F-608, entered in this Court on the 10th day of July, 2020, with his counsel then present, it is the judgment of this Court that the defendant, **ANDREW WAYNE MILLER, also known as A-4,** is guilty of Persons Prohibited from Possessing a Firearm.

THEREUPON, it was demanded of the said defendant, **ANDREW WAYNE MILLER, also known as A-4,** if anything he had or knew to say why the Court should not now proceed to pronounce the sentence of the law against him, and no valid reason being offered or alleged in delay of judgment, it is **CONSIDERED** and **ORDERED** by the Court that said defendant, **ANDREW WAYNE MILLER, also known as A-4,** be sentenced as follows:

**<u>19-F-608 Count One (Persons Prohibited from Possessing a Firearm)</u>:** to a state correctional facility for a determinate term of three (3) years, with credit for time spent in jail awaiting trial and conviction, which credit for time so spent in jail is one hundred forty-five (145) days.

And it is further **ORDERED** that the proper officer do, as soon as practicable, remove and safely convey the said **ANDREW WAYNE MILLER, also known as A-4,** from the South Central Regional Jail to the Division of Corrections, to be kept imprisoned and maintained in the manner prescribed by law.

WHEREUPON, the prisoner was remanded to jail.

The Court further **ORDERED** that Count Two of Felony Indictment Number 19-F-608 and Count Four of Misdemeanor Indictment Number 19-M-168 be dismissed and stricken from the docket.

The Court notes an **OBJECTION** and **EXCEPTION** on behalf of the defendant.

The Clerk is directed to send a certified copy of this **ORDER** to all counsel of record, Adam C. Petry (apetry@kanawhaprosecutor.com), Brian D. Yost (byost@wvlaborlaw.com), the Kanawha County Home Confinement Department, the South Central Regional Jail and the West Virginia Division of Corrections.

**ENTERED THIS** 11th **day of** September, **2020**

JOANNA I. TABIT, JUDGE
Thirteenth Judicial Circuit

**PRESENTED BY:**

/s/ Adam C. Petry

**ADAM C. PETRY, Assistant**
**Prosecuting Attorney in and for**
**Kanawha County, West Virginia**
**301 Virginia Street East**
**Charleston, WV 25301**
**WV State Bar ID No. 12417**

**INSPECTED BY:**

/s/ Brian D. Yost

**BRIAN D. YOST,**
**Attorney at Law**
**209 Washington St., West, Ste. 300**
**Charleston, WV 25302**
**Counsel for Defendant**
**WV State Bar ID No. 4166**

Date: 9.15.20
Certified copies sent to: B. Yost; DOC; KCC; SCRJ; PA; AP; PD; HC
Emailed

Faxed SCRJ; HC; DOC 9-11-20 CC





**STATE OF WEST VIRGINIA**
**DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY**
**DIVISION OF CORRECTIONS**

EARL RAY TOMBLIN
GOVERNOR

JIM RUBENSTEIN
COMMISSIONER

JOSEPH C. THORNTON
SECRETARY

DIVISION OF CORRECTIONS
CHARLESTON PAROLE +

1339 PLAZA EAST
CHARLESTON, WV 25301
TELEPHONE: (304) 558-3597
FAX: (304) 558-0441

To: ATTORNEY

From: Roshana L. Gray/201

Date: 9/23/2020

RE: MILLER, Andrew Wayne, #3452376

The following list is respectfully submitted to the Preliminary Hearing Officer for Andrew Miller's Preliminary Hearing scheduled on October 9, 2020 at 11:00am

1) Formal Charges, one page
2) Order of Release on Parole, four pages
3) Parole Rules and Regulations, six pages
4) Certified Commitment Order, one page
5) Certified Sentencing Order, three pages

Charge 1: You did violate Rule j of the Rules and Regulations governing your release on parole in that on or about September 1, 2020 you did use drugs to wit: Methamphetamines. (Parole Rules and Regulations and Order of Release on Parole)

O.C.
10/21/19 - Parole Violations [illegible]

Charge 2: You did violate Rule k of the Rules and Regulations governing your release on parole in that on or about September 9, 2020 you were convicted of the offense of Felon in Possession of a Firearm in Kanawha County Circuit Court. (Home Confinement Violation). (Parole Rules and Regulations, Order of Release on Parole, Certified Commitment Order, and Certified Sentencing Order)

**If you have any questions or concerns, feel free to contact me at (304) 558-3597**





Miller
Exhibit
# 3

Page 324

**468 S.E.2d 324**
**196 W.Va. 71**
**STATE of West Virginia, Plaintiff Below, Appellee.**
**v.**
**Frederick SEARS, Jr., Defendant Below, Appellant.**
**No. 23049.**
**Supreme Court of Appeals of West Virginia.**
**Submitted Jan. 9, 1996.**
**Decided Feb. 14, 1996.**

Page 326

[196 W.Va. 73] Syllabus by the Court

1. Both the construction and scope of W.Va.Code, 62-12-13(a)(1)(A) (1988), the parole statute, and a double jeopardy claim are reviewed de novo.

2. In order to establish a double jeopardy claim, the defendant must first present a prima facie claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant.

3. The purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments.

4. The strength of a double jeopardy claim is whether a defendant is facing multiple punishment for the same course of conduct. To determine if a particular statutory sanction constitutes punishment for double jeopardy purposes, courts should consider: (1) whether the statute serves solely a remedial purpose or serves to punish and deter criminal conduct and (2) whether the Legislature tied the sanction to the commission of specific offenses.

5. Under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), if two statutes contain identical elements of proof, the presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible.

6. A prior conviction which is used as the predicate to establish the crime of wanton endangerment with a firearm also cannot be used to enhance a defendant's punishment under W.Va.Code, 62-12-13 (1988), the parole statute, in the absence of explicit legislative authority.

Appeal from the Circuit Court of Ohio County; Honorable Fred Risovich II, Judge, No. 94-F-92.

Deborah L. McHenry, Managing Deputy Attorney General, Charleston, for Appellee.

Gail W. Kahle, Dickie, McCamey & Chilcote, Wheeling, for Appellant.

CLECKLEY, Justice:

The defendant below and appellant herein, Frederick Sears, Jr., was sentenced following a guilty plea to wanton endangerment involving a firearm. He now appeals the sentence entered against him. The defendant asserts the circuit court violated double jeopardy principles by applying the parole eligibility requirements of W.Va.Code, 62-12-13(a)(1)(A) (1988), when sentencing under the wanton endangerment involving a firearm statute contained in W.Va.Code, 61-7-12 (1994). Because the circuit court impermissibly enhanced the defendant's parole eligibility requirements, we remand for resentencing consistent with this opinion.

I.

FACTS AND PROCEDURAL HISTORY [1]



milled
Ex 3

On December 7, 1994, the defendant was charged under a six-count indictment arising from an incident involving firing multiple gunshots in the downtown area of Wheeling, West Virginia, on September 9, 1994. The defendant was charged with the following offenses: Count I--malicious assault in violation of W.Va.Code, 61-2-9(a) (1978); Count II--carrying a deadly weapon in violation of W.Va.Code, 61-7-3(a) (1989); Counts III, IV, and V--wanton endangerment involving a firearm in violation of W.Va.Code, 61-7-12; and Count VI--unlawful shooting in violation of W.Va.Code, 61-2-11 (1923).

The defendant entered into a plea agreement with the State and pleaded guilty on April 24, 1995, to Count III of the indictment, which alleged the defendant committed the offense of wanton endangerment involving a firearm by "unlawfully, wantonly and

Page 327

[196 W.Va. 74] feloniously" shooting a firearm at two people and thereby creating "a substantial risk of death or serious bodily injury." The State agreed to dismiss the remaining counts of the indictment as part of the plea agreement. In the "Notice of the Plea Agreement," the State recommended a three-year term of imprisonment at a correctional facility.

On May 1, 1995, the circuit court conducted a hearing where it gave the defendant an opportunity to withdraw his plea, explained possible sentencing options, and made a specific finding that the defendant used a firearm in the commission of his crime. The defendant declined to withdraw his plea and informed the court that he understood the sentencing possibilities. Defense counsel then questioned the applicability of W.Va.Code, 62-12-13(a)(1)(A). Under this statute, individuals found to have used a firearm in the commission of their crimes are ineligible for parole until three years or the full sentence has been completed, whichever is less. Defense counsel asserted this provision is a sentence enhancement and it was inappropriate to apply it in this case. The circuit court instructed defense counsel to brief the issue on or before May 10, 1995. A brief was submitted by defense counsel on May 9, 1995.

On May 12, 1995, the circuit court conducted a sentencing hearing. Counsel for the defendant and the State made statements concerning the applicability of W.Va.Code, 62-12-13(a)(1)(A). Without addressing the legal arguments, the circuit court stated: "Your motion to preclude application of sentencing enhancements in Chapter 61, Article 12, Section 13 is denied." [2] The circuit court then sentenced the defendant to five years in the penitentiary with parole eligibility in three years. The defendant appeals his sentence asserting that the application of W. Va.Code, 62-12-13, violates double jeopardy principles. [3]

II.

DISCUSSION

This case presents an interesting twist on a familiar issue. In this appeal, we are called upon to address the effect the parole statute, W.Va.Code, 62-12-13, has on sentencing. W.Va.Code, 62-12-13(a)(1)(A), provides in pertinent part: "[I]n no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his or her sentence or the maximum sentence imposed by the court, whichever is less[.]" [4] The defendant questions the applicability of this Code section to the underlying conviction for wanton endangerment involving a firearm embodied in W.Va.Code, 61-7-12. Under this provision,

"[a]ny person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty

fastcase

miller
Ex-3

dollars nor more than two thousand five hundred dollars, or both."

The defendant specifically contends that the use of the same firearm scenario to prove the principal charge of wanton endangerment with a firearm and also to increase the time required to be served before he is eligible for parole violates both State and federal prohibitions against double jeopardy.

Page 328

[196 W.Va. 75] We agree and hold that in the absence of clear evidence of legislative intent to the contrary, the parole enhancement statute is inapplicable to wanton endangerment involving a firearm.

A.

Standard of Review

Both the construction and scope of our parole statute and a double jeopardy claim are reviewed de novo. See United States v. Gardner, 65 F.3d 82, 85 (8th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 748, 133 L.Ed.2d 696 (1996); United States v. Jernigan, 60 F.3d 562, 563 (9th Cir.1995). In order to establish a double jeopardy claim, a defendant must first present a prima facie claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant. After reviewing the record, we hold the defendant has established a prima facie claim regarding the parole enhancement. Thus, we will consider the merits of his claim.

B.

Double Jeopardy Claim [5]

The Double Jeopardy Clause of the West Virginia Constitution provides, in part: "No person shall .... be twice put in jeopardy of life or liberty for the same offence." W.Va. Const. art. 3, § 5. [6] This clause historically has served the function of preventing both successive punishments and successive prosecutions and bars an accused from being twice punished for the same offense and from being twice tried for it. Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 306-07, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311, 323-24 (1984); State v. Rummer, 189 W. Va. 369, 432 S.E.2d 39 (1993); State v. Hersman, 161 W.Va. 371, 242 S.E.2d 559 (1978); Conner v. Griffith, 160 W.Va. 680, 238 S.E.2d 529 (1977). Thus, it can be said that the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938), abrogation on other grounds recognized by United States v. Sanchez-Escareno, 950 F.2d 193 (5th Cir.1991). Indeed, in Ex parte Lange, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872, 876 (1874), the United States Supreme Court stated: "If there is anything settled in the jurisprudence of England and America, it is that no man [or woman] can be twice lawfully punished for the same offence."

Stating the rule against double jeopardy is a relatively simple proposition; discerning the proper judicial test for implementing the rule, however, is more difficult. One scholar suggests that the yardstick in determining whether there can be multiple punishments is a difficult and subtle question: "The test announced most often in cases is that offenses are separate if each requires proof of an additional fact that the other does not. This seems of little value as a test. The real question is one of legislative intent, to be ascertained from all the data available." 1 Charles A. Wright, Federal Practice and Procedure § 142 at 469, 476-78 (1982). (Footnote omitted). This observation is well supported by both West Virginia and federal cases. See, e.g., State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992); United States v. Halper, 490 U.S. 435, 450, 109 S.Ct. 1892, 1902-03, 104 L.Ed.2d 487, 503 (1989);

Page 329



m. lled Er-.

[196 W.Va. 76] Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985); Ladner v. United States, 358 U.S. 169, 172-75, 79 S.Ct. 209, 211-13, 3 L.Ed.2d 199, 202-04 (1958); Bell v. United States, 349 U.S. 81, 82-83, 75 S.Ct. 620, 621-22, 99 L.Ed. 905, 909-10 (1955). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983). [7] See also United States v. Halper, 490 U.S. at 450, 109 S.Ct. at 1903, 104 L.Ed.2d at 503. Stated another way, "[t]he purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525-26, 105 L.Ed.2d 322, 331 (1989).

The focal point of the double jeopardy protection against a second punishment is the "offense" for which the defendant is prosecuted and punished and not the conduct criminalized by or related to that offense. [8] Attempting to fit within the rubric, the defendant first argues that we should apply the rule of statutory construction announced in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). [9] The essential question of that test is "whether each provision requires proof of ... [an additional] fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Under Blockburger, if two statutes contain identical elements of proof, the presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible. In this case, the defendant argues the application of the parole enhancement statute is punitive in nature and to include this punitive enhancement over and above the maximum sentence allowable for the underlying crime for the same offense fails the Blockburger test. Thus, he contends the parole enhancement violates the double jeopardy prohibition "in the absence of a clear indication of contrary legislative intent." Whalen v. United States, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715, 724 (1980). [10]

Page 330

[196 W.Va. 77] Although we have not yet addressed the double jeopardy implications of W.Va.Code, 62-12-13, the State argues the defendant's double jeopardy argument is fundamentally flawed because to apply Blockburger at this juncture would put the cart before the horse. According to the State, Blockburger applies only when the defendant has been put in jeopardy and then only when legislative intent is unclear. We believe it is necessary to address these arguments. [11]

It is axiomatic that "an accused must suffer jeopardy before he can suffer double jeopardy." Serfass v. United States, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265, 277 (1975). The strength of any double jeopardy claim is whether the defendant is facing multiple punishments for the same course of conduct. See Thomas v. C.I.R., 62 F.3d 97, 100 (4th Cir.1995), citing United States v. Morgan, 51 F.3d 1105, 1108 (2nd Cir.1995) (noting that the key word to be understood in an appeal brought under the Double Jeopardy Clause is "punishment"). Essentially, the State contends the parole enhancement was not a separate punishment and, for that reason alone, double jeopardy is not implicated. The first part of this statement need not detain us long. The cases cited above illustrate another point as well: The issue of double jeopardy can arise in a wide variety of contexts. The United States Supreme Court's decision in Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), informs our analysis.

The question raised in Kurth Ranch was whether a state tax on the possession of illegal drugs following the imposition of a criminal penalty for the same conduct violated the Double Jeopardy Clause. The Supreme Court emphasized the tax was remarkably high, had a deterrent purpose, and was conditioned on the commission



m.114 Ex-

of a crime. The Supreme Court stated: "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." 511 U.S. at ----, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Our reading of this case and the earlier decision of Austin v. United States, 509 U.S. 602, 617-18, 113 S.Ct. 2801, 2810-12, 125 L.Ed.2d 488, 503-06 (1993), indicates that to determine if a particular statutory sanction constitutes punishment, courts are directed to consider: (1) whether the statute serves solely a remedial purpose or serves to punish and deter criminal conduct, and (2) whether the Legislature tied the sanction to the commission of specific offenses. Undoubtedly, the parole enhancement, which is designed to punish and deter criminal conduct, is punitive in nature and, therefore, we are convinced the Legislature did not consider W.Va.Code, 62-12-13, to serve solely a remedial purpose.

More convincingly, this Court in Conner v. Griffith suggested that "[t]he question of whether the failure to credit time served on parole violates our constitutional prohibition against double jeopardy can best be answered by analyzing the nature of parole." 160 W.Va. at 683, 238 S.E.2d at 530. [12] After

Page 331

[196 W.Va. 78] finding that parole involves a valuable privilege worthy of constitutional protection, the Court in Syllabus Point 2 states: "The failure to credit on the underlying sentence the time served on parole prior to the revocation of parole constitutes a multiple punishment for the same offense, and is a violation of the Double Jeopardy Clause of the West Virginia Constitution, Article III, Section 5." Based on the reasoning contained in Conner, the current law in West Virginia equates at least some parole issues with "punishment" for double jeopardy purposes. [13] Thus, this Court already has decided that parole matters are within the purview of the Double Jeopardy Clause, and we discern no reason to disregard this persuasive authority in the context of this case.

In light of the well-established principle that the Legislature may intentionally prescribe multiple punishments for the same conduct, our task is to determine whether the Legislature manifested such an intent for the two statutory provisions under which the defendant was sentenced. [14] It appears to be the State's position that even if we were to apply the Blockburger test to W.Va.Code, 62-12-13, we would find no double jeopardy problem. If the relevant statutes on their face indicate a clear legislative intent to allow multiple punishments, we need not engage in a Blockburger analysis because we must give effect to that legislative intent. [15] See Garrett, 471 U.S. at 779, 105 S.Ct. at 2411, 85 L.Ed.2d at 771-72. In this regard, the State suggests the clear indication of the Legislature in enacting W.Va.Code, 62-12-13, is that its penalty is to apply in addition to the punishment provided for the underlying crime in which the firearm is used. If this is so, the State is correct in its assertion that this legislative intent eliminates any Blockburger problem.

By enacting W.Va.Code, 62-12-13, and W.Va.Code, 61-7-12, there can be no doubt that the Legislature was directing its attention to the increasing problem of the illegal use of firearms. The intent is clear that the Legislature wanted to assure lengthy prison sentences for gun-toting offenders and the offense committed in this case is precisely the type of dangerous offense for which a lengthy prison sentence is most appropriate. The narrow question we must answer is whether the Legislature also intended to stack the parole enhancement with the underlying firearm conviction sentence.

According to the State, W.Va.Code, 62-12-13(a)(1)(A) functions like a sentencing enhancement statute and, as such, does not operate as a second punishment. There are significant differences between the instant case and those upholding other sentencing

Page 332



Miller Ex - 3

[196 W.Va. 79] enhancement statutes. [16] In jurisdictions upholding sentencing enhancements where legislative intent is not explicit, courts follow three different lines of analysis to justify their holdings: (1) the proof of differing elements constitute two offenses under Blockburger v. United States, supra; (2) evidence of prior criminal acts by a defendant justify the sentencing enhancement; or (3) a finding that instead of creating multiple punishments in violation of double jeopardy protections, the sentencing enhancement statutes merely limit the sentencing discretion of a court or a parole board. [17]

We find some guidance for the appropriate resolution of this case in the recent decision of Witte v. United States, --- U.S. ----, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). The issue presented in Witte was "whether a court violates ... [the Double Jeopardy Clause] by convicting and sentencing a defendant for a crime when the conduct underlying the crime has been considered in determining the defendant's sentence for a previous conviction." --- U.S. at ----, 115 S.Ct. at 2202, 132 L.Ed.2d at 359.

In Witte, the defendant was originally convicted and sentenced for marijuana dealing. In sentencing him for this offense, the district court took into consideration "other relevant conduct," which included the defendant's cocaine dealing, and departed upward. The resultant sentencing range was higher than it would have been if only the drugs involved in the conviction had been considered, but the sentence was still within the range authorized by the statute for the crime. The defendant was subsequently indicted for his cocaine dealing, the same conduct which formed the basis for the upward departure on the sentence for the marijuana conviction. The defendant argued that his prosecution and punishment for cocaine dealing would violate double jeopardy principles. The Supreme Court rejected this argument holding that "where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction[.]" --- U.S. at ----, 115 S.Ct. at 2207, 132 L.Ed.2d at 366. Thus, the prosecution for cocaine dealing would not be a serious attempt to punish the defendant for the same crime. [18]

Page 333

[196 W.Va. 80] Although Witte is not controlling in this case, we can glean helpful suggestions from the Supreme Court's analysis. First, the rationale given by the Supreme Court was that, as in the case of repeat offender statutes, sentencing enhancement statutes for prior criminal convictions do not create multiple punishments for the same offense when unadjudicated criminal conduct is taken into account in sentencing for conviction of a different offense. Specifically, the Supreme Court stated:

"Williams [v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) ], like this case, concerned the double jeopardy implications of taking the circumstances surrounding a particular course of criminal activity into account in sentencing for a conviction arising therefrom. Similarly, we have made clear in other cases, which involved a defendant's background more generally and not conduct arising out of the same criminal transaction as the offense of which the defendant was convicted, that '[e]nhancement statutes, while in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are commonplace in state criminal laws, do not change the penalties imposed for the earlier conviction.' Nichols [v. United States, 511 U.S. 738, ----, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745, 754 (1994) ] ... (approving consideration of a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense). In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' " Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256[, 1258], 92 L.Ed. 1683[, 1687] (1948)."



m. Ilen
EX-3

Witte v. United States, --- U.S. at ----, 115 S.Ct. at 2206, 132 L.Ed.2d at 364. (Emphasis added).

The essence of Witte is that "[b]ecause consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense." --- U.S. at ----, 115 S.Ct. at 2209, 132 L.Ed.2d at 368. The determinative factor is that Congress expressly stated what relevant factors are to be considered for sentencing purposes. Therefore, Witte is consistent with other cases that suggest the purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, what the Legislature intended. In other words, double jeopardy precludes the multiple use of the same facts to prove a predicate offense and then to use the same facts and offense as a punitive device to enhance the parole eligibility date where there is an absence of any showing that the legislature intended to permit such double usage. In Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981), the United States Supreme Court placed the matter in proper context:

"[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where ... the [Legislature] intended ... to impose multiple punishments, imposition of such sentences does not violate ... [double jeopardy]."

To be clear, we must defer to legislative determination of whether a specific course of conduct can be punished both as an underlying conviction and as a parole enhancement. See generally Sanabria v. United States, 437 U.S. 54, 70, 98 S.Ct. 2170, 2182, 57 L.Ed.2d 43, 57 (1978).

Thus, the question is whether the Legislature unambiguously intended the parole enhancement from W.Va.Code, 62-12-13, to apply if a person is convicted and sentenced under W.Va.Code, 61-7-12. There is nothing in either statute that clearly indicates the Legislature's intent concerning the wanton endangerment involving a firearm statute and the parole restrictions. Although there

Page 334

[196 W.Va. 81] is a presumption that "the legislature, when it enacts legislation, is familiar with its prior enactments," it is probable that in this case the legislature did not consider the interrelationship of these two statutes. State ex rel. Foster v. City of Morgantown, 189 W.Va. 433, 436, 432 S.E.2d 195, 198 (1993). See also State ex rel. Smith v. Maynard, 193 W.Va. 1, 8-9, 454 S.E.2d 46, 53-54 (1994). What is apparent is that not every violation involving a firearm is to be treated the same under the parole statute. Later sections of the statute provide for different restrictions for some crimes. [19]

The Legislature in fixing the penalty for the underlying offense has already taken into consideration the defendant's use of a firearm. [20] There is an obvious conflict between these two statutes because anyone convicted of the firearm offense is by definition brought within the parole enhancement statute. In our judgment, to apply the parole enhancement statute merely based upon the defendant's firearm conviction would have the practical effect of nullifying the penalty provisions of the firearm statute.

Furthermore, to the extent that the statute can be considered ambiguous, the rule of lenity requires us to resolve that ambiguity in favor of the defendant. This merely means that when the Legislature fails to indicate the allowable unit of prosecution and sentence with clarity, doubt as to legislative intent should be resolved in favor of lenity for the accused. [21] We hold that a prior conviction which is used as the predicate

Page 335

[196 W.Va. 82] to establish the crime of wanton endangerment with a firearm cannot be used to enhance the defendant's punishment under the





parole statute in the absence of explicit legislative authority. To rule otherwise would undermine the purpose of the sentencing provision of W.Va.Code, 61-7-12, and introduce the probabilities for sentencing inconsistent with legislative intent.

The crucial difference between this case and the cases relied on by the State is founded in our analysis of legislative intent. If the West Virginia Legislature intended to allow the same firearm conviction to serve as the basis for a separate prosecution and to be used to enhance parole, the Double Jeopardy Clause does not stand in its way. However, we are left to guess as to whether the Legislature intended to consolidate punishment under these two statutes. Absent evidence to the contrary, it is presumed the Legislature did not intend to punish the same offense under two statutes. See Ball v. United States, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740, 745-46 (1985).

Of course, once the Legislature clearly indicates its intention regarding the parole enhancement, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class. Otherwise, the Legislature would have to repeat itself restating in each subsequent enactment an intention the Legislature thought it had expressed once already. Today's decision does not require such a convoluted approach to lawmaking.

III.

CONCLUSION

For the foregoing reasons, we remand this case with instruction to the Circuit Court of Ohio County for proceedings consistent with this opinion.

Remanded with instructions.

---------------

1 The facts are undisputed in this case.

2 Presumably the circuit court meant the sentencing enhancement pursuant to W.Va.Code, 62-12-13.

3 The defendant also claims that: (1) principles of statutory interpretation require that in times of conflict a court will apply a specific statute (in this case, W.Va.Code, 61-7-12) over a general statute (in this case, W.Va.Code, 62-12-13), and (2) in case of an ambiguous statute, a court will construe the interpretation in favor of a defendant.

4 Parole regulations fall under W.Va.Code, 62-12-13, which generally provides, in part, that any prisoner in a penitentiary of this State must serve either the minimum term of an indeterminate sentence or one fourth of a determinate sentence except when a firearm is used in the commission of a felony. See note 19, infra, for text.

5 There may be some question as to whether the double jeopardy claim raised below is the same in scope as that raised on appeal. This issue need not detract us. The rule is clear that most double jeopardy claims arising from sentencing may be raised at any stage of a criminal proceeding and may properly be raised for the first time on appeal.

6 The Fifth Amendment to the United States Constitution is nearly identical: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb." The scope of the Double Jeopardy Clause of the Fifth Amendment is at least coextensive with that of the Double Jeopardy Clause in the West Virginia Constitution. State v. Frazier, 162 W.Va. 602, 252 S.E.2d 39 (1979). We find it significant in this case that the West Virginia Constitution includes the word "liberty" as part of the double jeopardy protections.

7 In Hunter, 459 U.S. at 367, 103 S.Ct. at 678-79, 74 L.Ed.2d at 543, the Supreme Court provided that "cumulative punishment can presumptively be assessed after conviction for two offenses that are not the 'same' under Blockburger [v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ]."



M. 11e4
Ex-3

8 Despite the traditional focus of the multiple prosecutions' bar and the multiple punishments' bar on the "offence" (the word specifically used in the United States Constitution), a short-lived opinion by the United States Supreme Court shifted the focal point of the multiple prosecutions' bar from the offense to the conduct underlying the offense. In Grady v. Corbin, 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548, 557 (1990), overruled by United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court imposed an additional conduct test on the Blockburger same-elements test for determining if a second prosecution was barred. The conduct emphasis did not last long, however, as the Supreme Court recently and forcefully rejected the Grady "same conduct" test in Dixon, 509 U.S. at 703-04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. Thus, instead of achieving consistency in double jeopardy analyses by pivoting the focus of the multiple punishments' bar toward the Grady "same conduct" test, the Supreme Court reasserted that the focus of multiple prosecutions' bar is the "same offense" as defined by Blockburger. 509 U.S. at 703-04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. Justice Scalia stated for a bare majority of the Dixon Court:

"We have often noted that the [Double Jeopardy] Clause serves the function of preventing both successive punishment and successive prosecution, ... but there is no authority, except Grady, for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term 'same offence' (the words of the Fifth Amendment at issue here) has two different meanings--that what is the same offense is yet not the same offense." 509 U.S. at 703-04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. (Emphasis in original; citation omitted).

9 Partial modification recognized by United States v. Liller, 999 F.2d 61 (2nd Cir.1993).

10 In Whalen, the Supreme Court stated:

"The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." 445 U.S. at 689, 100 S.Ct. at 1436, 63 L.Ed.2d at 722.

11 Despite identical elements in the two statutes, the State maintains there is no double jeopardy problem. The State asserts the defendant "has not been subjected to multiple punishment[s]. Rather, ... [the defendant] has been sentenced only once for a single offense." The State attacks the defendant's argument on two grounds: First, the parole statute is a matter of "legislative grace" as opposed to punishment; and, second, the parole statute falls within the category of permissible sentence enhancement-type statutes.

12 Although Conner dealt with a different issue, it still is instructive. Conner concerned the failure of the parole board to give a defendant credit for time served on parole prior to parole revocation. In Conner, we acknowledged that lengthening the time served as a result of parole regulations amounts to a violation of the Double Jeopardy Clause and parole restrictions can equal punishment under certain circumstances. Theoretically, in Conner, we could have found that because parole is a matter of "legislative grace," any violation of parole would require the parolee to complete his or her sentence from the date he or she was originally released with no credit for time served on parole. Instead, we rejected this notion and held that an extension to the length of a sentence is impermissible. Similarly, in the instant case, the restriction of parole eligibility definitely lengthens the amount of time the defendant will have to stay in prison before he even may be considered for parole.

13 The State is correct that parole is essentially a matter of "legislative grace." See State v. Lindsey, 160 W.Va. 284, 291, 233 S.E.2d 734, 738-39 (1977) ("[o]ne convicted of a crime and sentenced to the penitentiary is never entitled to parole." (Emphasis in original)). However, it is this aspect of parole that was downplayed by the Court in Conner. Because parole is a means of shortening a



Miller Ex-3

sentence, the restriction thereof necessarily operates as a form of punishment,

14 In Syllabus Points 3 and 4 of State v. Rummer, supra we found:

"3. 'A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.' Syllabus Point 7, State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992).

"4. 'In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.' Syllabus Point 8, State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992)."

See also Syl. pt. 4, State v. Sayre, 183 W.Va. 376, 395 S.E.2d 799 (1990); Syl. pt. 8, State v. Zaccagnini, 172 W.Va. 491, 308 S.E.2d 131 (1983).

15 Case law makes it clear that "where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under Blockburger, a court's task of statutory construction is at an end ... and the trial court ... [may] impose cumulative punishment under such statutes in a single trial." 2 Franklin D. Cleckley, Handbook on West Virginia Criminal Procedure at II-186 (1993).

16 Generally, recidivist statutes seek to punish for the commission of a crime by repeat offenders. It is the repeat nature of the criminal's history that justifies the enhancement of the punishment. These same considerations do not exist in this case. Here, there is no prior bad act or offense to justify stiffening the penalty. Only the underlying crime for which the defendant stands convicted is being considered. W.Va.Code, 62-12-13(a)(1)(A), does not require the proof of any other aggravating element above and beyond that which was necessary to convict the defendant for wanton endangerment involving a firearm.

17 Jurisdictions upholding these statutes find there is no double jeopardy violation because no substantive offense has been implicated and the enhancement is justified because " 'the repetition of criminal conduct aggravates [the defendant's] ... guilt and justifies heavier penalties when he is again convicted,' " United States v. Wallace, 889 F.2d 580, 584 (5th Cir.1989), quoting United States v. Bowdach, 561 F.2d 1160, 1175 (5th Cir.1977). This Court also upheld a recidivist statute in Gibson v. Legursky, 187 W.Va. 51, 415 S.E.2d 457 (1992). In Gibson, we justified our holding by stating:

" 'Because the habitual criminal statute does not create new or separate offenses, but rather defines statutes which mandate enhanced or different punishment, ... the use of a prior conviction as a determinant of status does not constitute double jeopardy. It is the total number of felony convictions that determines what punishment will be imposed, not the specific offenses involved. Only the fact of the various convictions, and not the facts underlying those offenses, is determinative of a defendant's status.' " 187 W.Va. at 53, 415 S.E.2d at 459, quoting People v. Anderson, 43 Colo.App. 178, 181, 605 P.2d 60, 62 (1979). (Citations omitted).

See also State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), cert. denied, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983). Despite the various justifications given to support recidivist statutes, only one justification for the enhancement need be given and that is the enhancement was unambiguously authorized by the Legislature. See 2 Franklin D. Cleckley, Handbook on West Virginia Criminal Procedure at II-13 (1995 Supp.) ("[a]lthough the bar on double jeopardy restrains the executive and



m. 114

EX-3

judicial branches, it leaves the legislature basically untouched"). It is axiomatic that the Legislature may within broad limits decide the penalty for each case.

18 The Federal Sentencing Guidelines further protect against "double counting" by providing for concurrent sentences if, as in the Witte case, a defendant is found guilty of the cocaine charge, because it was previously taken into account as "relevant conduct" in a marijuana case.

19 W.Va.Code, 62-12-13, states, in part:

"Any prisoner of a penitentiary of this state, to be eligible for parole:

"(1)(A) Shall have served the minimum term of his or her indeterminate sentence, or shall have served one fourth of his or her definite term sentence, as the case may be, except that in no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his or her sentence or the maximum sentence imposed by the court, whichever is less: Provided, That any person who committed, or attempted to commit, any violation of section twelve [§ 61-2-12], article two, chapter sixty-one of this code, with the use, presentment or brandishing of a firearm, shall not be eligible for parole prior to serving a minimum of five years of his or her sentence or one third of his or her definite term sentence, whichever shall be the greater. Nothing in this section shall apply to an accessory before the fact or a principal in the second degree who has been convicted as if he or she were a principal in the first degree if, in the commission of or in the attempted commission of the felony, only the principal in the first degree used, presented or brandished a firearm. No person is ineligible for parole under the provisions of this subdivision because of the commission or attempted commission of a felony with the use, presentment or brandishing of a firearm unless such fact is clearly stated and included in the indictment or presentment by which such person was charged and was either (i) found by the court at the time of trial upon a plea of guilty or nolo contendere, or (ii) found by the jury, upon submitting to such jury a special interrogatory for such purpose if the matter was tried before a jury, or (iii) found by the court, if the matter was tried by the court without a jury." (Emphasis added).

20 The Legislature already has recognized the seriousness of the misuse of a firearm by making the use of a firearm in a certain manner a criminal act under the wanton endangerment involving a firearm statute. This statute already acknowledges the "added element of danger" a firearm presents by making the existence of a firearm to commit the crime a necessary element. It is unclear from either statute whether the Legislature intended to stack the parole restrictions on top of the wanton endangerment involving a firearm penalties.

21 Because legislative intent is unclear we are compelled to apply the rule of lenity. Under this rule "[i]n the area of double punishments, doubts are to be resolved in favor of the defendant" in order to avoid double jeopardy problems. 2 Franklin D. Cleckley, Handbook on West Virginia Criminal Procedure at II-194. See also, United States v. Barrington, 662 F.2d 1046 (4th Cir.1981). The United States Supreme Court in Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205, 211 (1980), superseded by statute as stated in United States v. Wessels, 12 F.3d 746 (8th Cir.1993), described the rule of lenity as "the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what ... [the Legislature] intended.' " (Citation omitted). In this case, because there is the possibility of double counting that is not intended by the Legislature, we are compelled to follow the Supreme Court and other jurisdictions and apply the rule of lenity. We find this is a reasonable course to take when such substantial interests are at stake. The judiciary should be hesitant to impose such restrictions when it is not clear this is the Legislature's unequivocal desire.

U.S. POSTAGE PITNEY BOWES
ZIP 26273 $ 001.60
02 4W
0000378831 AUG 03 2021
U.S.D.C.
300 Virginia St
Charleston, WV
25301